HEATHER E. WILLIAMS, CA Bar #122664
Federal Defender
LISA N. LUMEYA, DC Bar #90017392
Assistant Federal Defender
Office of the Federal Defender
2300 Tulare Street, Suite 330
Fresno, CA  93721-2226
Telephone: (559) 487-5561
Fax: (559) 487-5950

Counsel for Defendant
JACK PROPECK

# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 6:25-mj-00056-HBK |
| Plaintiff, | |
| vs. | **NOTICE OF MOTION AND MOTION TO DISQUALIFY NATIONAL PARK SERVICE** |
| JACK PROPECK, | Date:   September 10, 2026 |
| Defendant. | Judge: Hon. Helena Barch-Kuchta |

**TO:    COUNSEL FOR PLAINTIFF; UNITED STATES ATTORNEY, ERIC GRANT, ASSISTANT UNITED STATES ATTORNEY, JOSHUA BANISTER, ACTING YOSEMITE LAW ENFORCEMENT SPECIALIST, BRIANA VOLLMER:**

**PLEASE TAKE NOTICE** that on September 10, 2026, according to the court's order, in the Eastern District of California, before the Honorable Magistrate Judge Helena Barch-Kuchta, Defendant Jack Propeck, through undersigned counsel, will bring on for hearing the following Motion to Disqualify the National Park Service.

## MOTION

Mr. Propeck, by and through his counsel of record, Assistant Federal Defender Lisa N. Lumeya, hereby moves this Court for an order disqualifying the National Park Service from further prosecutorial action in the instant case under the Court's supervisory power. This motion is made

pursuant to Federal Rule of Criminal Procedure 12, 47, Eastern District of California Local Rule Crim. 430.1, and such other statutory and constitutional rules as may be applicable.

This motion is based upon the instant motion and notice of motion, the accompanying memorandum of points and authorities, the files and records in the above-entitled case, and any and all other information that may be brought to the Court's attention before or during the hearing on this motion.

Respectfully submitted,

HEATHER E. WILLIAMS
Federal Defender

Date: July 28, 2026

*/s/ Lisa Ndembu Lumeya*
LISA N. LUMEYA
Assistant Federal Defender
Counsel for Defendant
JACK PROPECK

**TABLE OF CONTENTS**

PAGE

I.     STATEMENT OF ISSUES ................................................................................1

II.    BACKGROUND ..............................................................................................1

       A.  Procedural History ................................................................................1

       B.  Legal Background ................................................................................2

III.   LEGAL STANDARD........................................................................................3

IV.    ARGUMENT ...................................................................................................4

       A.    The United States Unlawfully Delegated its Prosecutorial Authority to
             Active Law Enforcement Rangers in Violation of 28 U.S.C. § 516,
             Rendering Any Prosecutorial Conduct Taken by the NPS *Ultra Vires*. ...........6

             1. The DOJ is Required by Statute to Litigate on Behalf of the
                United States. ...................................................................................6

             2. The Department of the Interior May Empower the NPS to Exercise
                Certain Police Powers—Not Prosecutorial Powers—on its Behalf ..............8

       B.    The Local Rules Cannot Authorize the United States to Delegate its
             Prosecutorial Authority to NPS .........................................................9

       C.    Upholding a System of Police Prosecution Contravenes Foundational
             Principles of Fairness and Distorts the Appearance of Justice. .................11

             1.  A Law Enforcement Ranger is Not a Federal Prosecutor..........................12

             2.  The Presumption of Regularity Does Not Apply to a Law
                 Enforcement Ranger .................................................................................12

             3.  A System of Police Prosecution is Devoid of the Safeguards
                 Underpinning the Foundational Structure of Criminal Law ......................13

       D.    This Court Should Exercise Its Supervisory Power to Remedy the
             Government's Unlawful Delegation by Disqualifying the NPS. ...................19

V.     CONCLUSION...............................................................................................20

i

**TABLE OF AUTHORITIES**

**PAGE**

**FEDERAL CASES**

*ABS Entertainment, Inc. v. CBS Corporation*
908 F.3d 405 (9th Cir. 2018) ............................................................................................9

*BedRoc Ltd., LLC v. United States*
541 U.S. 176 (2004).........................................................................................................4

*Berger v. United States*
295 U.S. 78 (1935)..........................................................................................................12

*Bordenkircher v. Hayes*
434 U.S. 357 (1978)........................................................................................................13

*Certain Underwriters at Lloyd's London v. Argonaut Ins. Co.*
264 F. Supp. 2d 914 (N.D. Cal. 2003) ............................................................................4

*Connell v. Lima Corp.*
988 F.3d 1089 (9th Cir. 2021) .........................................................................................6

*Frazier v. Heebe*
482 U.S. 641 (1987).............................................................................................2, 3, 9, 11

*Freeman v. Chicago Musical Instrument Co.*
689 F.2d 715 (7th Cir. 1982) ...........................................................................................4

*Holbrook v. Flynn*
475 U.S. 560 (1986)........................................................................................................15

*In re Persico*
522 F.2d 41 (2d Cir. 1975)...............................................................................................6

*Jones v. Niagara Frontier Transp. Auth.*
722 F.2d 20 (2d Cir. 1983)..............................................................................................18

*Kirby v. Illinois*
406 U.S. 682 (1972)........................................................................................................14

*Lamie v. U.S. Tr.*
540 U.S. 526 (2004).........................................................................................................6

*Laws. for Fair Reciprocal Admission v. United States*
141 F.4th 1056 (9th Cir. 2025) ........................................................................................2

**TABLE OF AUTHORITIES (Cont'd)**

**PAGE**

**FEDERAL CASES (Cont'd)**

*Leonard v. U.S. Postal Service*
489 F.2d 814 (1st Cir. 1974)........................................................................7

*Offutt v. United States*
348 U.S. 11 (1954)........................................................................20

*Ortega-Mendez v. Gonzales*
450 F.3d 1010 (9th Cir. 2006) .........................................................14

*Perrin v. United States*
444 U.S. 37 (1979)........................................................................4

*Snyder v. United States*
603 U.S. 1 (2024)........................................................................6

*United States v. Armstrong*
517 U.S. 456 (1996)........................................................................5

*United States v. Baldwin*
541 F. Supp. 2d 1184 (D.N.M. 2008) .........................................................6

*United States v. Banuelos-Rodriguez*
215 F.3d 969 (9th Cir. 2000) .........................................................12

*United States v. Batchler*
No. 2:16-cr-00292, 2017 WL 1745025 (D. Nev. May 2, 2017)........................................17

*United States v. Bowen*
799 F.3d 336 (5th Cir. 2015) .........................................................12

*United States v. Brown*
42 F.4th 1142 (9th Cir. 2022) .........................................................4

*United States v. Davis*
793 F.3d 712 (7th Cir. 2015) (en banc) .........................................................12

*United States v. Edwards*
154 F.3d 915 (9th Cir. 1998) .........................................................13

**TABLE OF AUTHORITIES (Cont'd)**

**PAGE**

**FEDERAL CASES (Cont'd)**

*United States v. Foster*
985 F.2d 466 (9th Cir. 1993) ...............................................................................................19

*United States v. Giraud*
160 F.4th 390 (3d Cir. 2025) ...............................................................................................20

*United States v. Johnston*
690 F.2d 638 (7th Cir. 1982) ...............................................................................................13

*United States v. Kojayan*
8 F.3d 1315 (9th Cir. 1993) .................................................................................................19

*United States v. Libby*
429 F. Supp. 3d 27 (D.D.C. 2006) .........................................................................................7

*United States v. Lopez-Avila*
678 F.3d 955 (9th Cir. 2012) .........................................................................................18, 19

*United States v. Marsh*
No. 1:24-mj-00092-HBK, 2024 WL 4667801 (E.D. Cal. Nov. 4, 2024) ....................10, 16

*United States v. Nishiie*
996 F.3d 1013 (9th Cir. 2021) ...............................................................................................4

*United States v. Plascencia-Orozco*
852 F.3d 910 (9th Cir. 2017) .................................................................................................3

*United States v. Prantil*
764 F.2d 548 (9th Cir. 1985) ...............................................................................................18

*United States v. Robinson*
967 F.2d 287 (9th Cir. 1992) ...............................................................................................14

*United States v. Sellers*
906 F.3d 848 (9th Cir. 2018) ...................................................................................12, 13, 15

*United States v. Urutyan*
564 F.3d 679 (4th Cir. 2009) .................................................................................................4

*United States v. Washington*
869 F.3d 193 (3d Cir. 217)...................................................................................................13

iv

## TABLE OF AUTHORITIES (Cont'd)

**PAGE**

### FEDERAL CASES (Cont'd)

*United States ex rel. Schwartz v. TRW Inc.*
118 F. Supp. 2d 991 (C.D. Cal. 2000) ...............................................................................18

*Wayte v. United States*
470 U.S. 598 (1985)..............................................................................................................14

*Wheat v. United States*
486 U.S. 153 (1988)................................................................................................................4

*Young v. United States ex. rel. Vuitton*
481 U.S. 787 (1987)..............................................................................................................14

### CONSTITUTIONAL PROVISIONS AND STATUTES

United States Constitution
Art. II, Sec. 3...........................................................................................................................5

United States Code
26 U.S.C. § 7452......................................................................................................................7
28 U.S.C. § 501 *et seq*...........................................................................................................4
28 U.S.C. § 510.........................................................................................................................7
28 U.S.C. § 515.........................................................................................................................7
28 U.S.C. § 516..................................................................................................................*passim*
28 U.S.C. § 519.........................................................................................................................6
28 U.S.C. § 530B...................................................................................................................17
28 U.S.C. § 530C...................................................................................................................19
28 U.S.C. § 543....................................................................................................................7, 8
28 U.S.C. § 547....................................................................................................................6, 9
28 U.S.C. § 2071 *et seq*........................................................................................................2
28 U.S.C. § 2072.......................................................................................................................2
54 U.S.C. § 102701.............................................................................................................8, 12

### FEDERAL COURT RULES

Eastern District of California Local Rules
180..................................................................................................................................*passim*
181................................................................................................................................2, 17
182........................................................................................................................................2
183........................................................................................................................................2
184........................................................................................................................................2

**TABLE OF AUTHORITIES (Cont'd)**

**PAGE**

**FEDERAL COURT RULES (Cont'd)**

Federal Rules of Criminal Procedure
12.................................................................................................................................3
58.................................................................................................................................9

**EXECUTIVE AND AGENCY MATERIALS**

Fighting Overcriminalization in Federal Regulations
Exec. Order No. 14294, 90 Fed. Reg 20363 (May 14, 2025)..........................................14

Department of the Interior, National Park Service Law Enforcement Ranger Program
*Available at* https://www.doi.gov/oles/national-park-service-law-enforcement-ranger-
program.........................................................................................................................12

Office of the Legal Counsel, *Detailing Attorneys to the Department of Justice to Serve as
Immigration Judges and Special Assistant United States Attorneys*
49 Op. O.L.C. __ (Oct. 23, 2025), 2025 WL 3251684 .......................................................8

**MISCELLANEOUS**

Case Documents
Defendant's Motion, *United States v. Gearheart*
6:23-mj-00006-HBK, ECF No. 63 (E.D. Cal. Mar. 5, 2025) .............................................16

Defendant's Reply, *United States v. Marsh*
1:24-mj-00092-HBK, ECF No. 16 (E.D. Cal. Sept. 27, 2024)..........................................16

Defendant's Reply, *United States v. O'Brien*
6:25-mj-00015-HBK, ECF No. 17 (E.D. Cal. June 17, 2026)...........................................16

Trial Audio, *United States v. O'Brien*
6:25-mj-00015-HBK, ECF No. 25 (E.D. Cal. June 29, 2026)...........................................16

American Bar Association Model Rules of Professional Conduct
Model Rule 1.1 (Competence)........................................................................................17
Model Rule 3.7 (Lawyer as Witness) .............................................................................18
Model Rule 3.8 (Special Responsibilities of a Prosecutor) ............................................17

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    STATEMENT OF ISSUES

The issues presented before this Court are:

(1) Whether the government unlawfully delegated its prosecutorial authority reserved to the Department of Justice under 28 U.S.C. § 516 by authorizing the National Park Service to prosecute the instant case on behalf of the United States; and

(2) if the government's interpretation of assigning its prosecutorial duties to non-Department of Justice employees is supported by the local rules, whether Eastern District of California, Local Rule 180(b)(4)'s delegation of authority is unlawful.

### II.    BACKGROUND

#### A.  Procedural History

On December 12, 2025, the National Park Service ("NPS") charged Mr. Propeck by criminal complaint, alleging a violation under 36 C.F.R. § 2.17(a)(3) for "BASE"[1] jumping in Yosemite National Park.  ECF No. 1.  Mr. Propeck made his initial appearance before this Court on April 7, 2026.  ECF No. 8.  And a non-attorney, active law enforcement ranger and law enforcement specialist with the NPS appeared on behalf of the United States.

Although an Assistant United States Attorney ("AUSA") is listed on an attorney of record on the electronic docket, he has never made a court appearance.  A Rule 180 NPS representative is also noticed as a lead attorney, and designated as an AUSA, and two other Rule 180 NPS representatives have made court appearances.  *See* ECF No. 11, 13.  On June 2, 2026, the Court held a status conference at which a Rule 180 NPS representative stated that she tendered a plea offer.  ECF No. 11.

At a July 7, 2026 status conference, this Court scheduled an October 5, 2026 bench trial, and set a briefing schedule.  ECF No. 13.  The Court also scheduled oral argument on the motion on September 10, 2026.  ECF No. 15.

//

---

[1] The acronym BASE refers to buildings, antennas, spans, and earth.

Propeck / Motion to Disqualify National Park Service
and Memorandum of Points and Authorities

### B. Legal Background

In the Rules Enabling Act of 1934, Congress delegated its authority to the Supreme Court and district courts to prescribe certain rules of practice and legal procedure. 28 U.S.C. §§ 2071–2077. The Rules Enabling Act delineates the scope of authority through which federal courts may prescribe rules of judicial procedure. *See* 28 U.S.C. § 2071(a) (explaining that judicial rules must be "consistent with Acts of Congress and rules of practice and procedure prescribed under section 2072"). Section 2072 authorizes the Supreme Court to set "general rules of practice and procedure and rules of evidence for cases in the United States district courts (including proceedings before magistrate judges thereof) and courts of appeals" on the condition that such procedural rules do "not abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072(a–b).

As the Supreme Court explains, "a district court has discretion to adopt local rules that are necessary to carry out the conduct of its business." *Frazier v. Heebe*, 482 U.S. 641, 645 (1987). These procedural rules must remain "consistent with 'the principles of right and justice" and fall within the boundaries of § 2071. *Id*. at 645–46 (quotation marks omitted). When exercising such authority, a district court may prescribe local rules regulating conduct such as attorney admissions, discipline, and practice. *Laws. for Fair Reciprocal Admission v. United States*, 141 F.4th 1056, 1063–64 (9th Cir. 2025).

In the Eastern District of California, Local Rules 180–84 set forth procedural requirements through which every practitioner appearing before this Court is bound. *See* L.R. 180 and 182 (primarily regulating *attorney* procedure); L.R. 181 (governing the practice of *certified law students*); L.R. 182 (outlining *attorney* appearance and withdrawal procedure); L.R. 183 (setting a framework for an individual representing herself without an *attorney*); L.R. 184 (establishing *attorney* disciplinary procedures). Local Rule 180 ("Rule 180") outlines requirements for attorney admission to this Court's bar; regulates standards of professional conduct; and sets forth ethical obligations. As indicated by its title—"Attorneys"—Rule 180 primarily governs the practice of attorney practitioners within the federal district. But as relevant here, Rule 180 also provides a unique exception under which non-attorney practitioners may appear in federal court on behalf of the government. Rule 180(b)(4) provides:

(A) An officer, agent or employee of a federal agency or department may practice before the Magistrate Judges on criminal matters in this Court, whether or not that officer, agent, or employee is an attorney, if that officer, agent or employee:

(i) has been assigned by the employing federal agency or department to appear as a prosecutor on its behalf;

(ii) has received four or more hours training from the United States Attorney's Office in the preceding twenty-four (24) months;

(iii) has filed a designation in accordance with (B); and

(iv) is supervised by the United States Attorney's Office. Supervision by the United States Attorney's Office means that employees of that Office are available to answer questions of any such officer, agent, or employee.

(B) Designations shall be filed on a form provided by the Clerk that shall include a verification that the officer, agent, or employee has satisfied the requirements of this Rule. A designation is effective for twenty-four (24) months. The officer, agent, or employee shall file the designation either in Fresno, if the officer, agent, or employee anticipates appearing only before Magistrate Judges at locations in the counties specifically enumerated in L.R. 120(b), or in Sacramento in all other circumstances. After filing the designation in any calendar year, the officer, agent, or employee shall not appear before any particular Magistrate Judge without providing a copy of the designation to that Magistrate Judge.

(C) Officers, agents and employees so permitted to practice in this Court are subject to the jurisdiction of this Court with respect to their conduct to the same extent as members of the Bar of this Court.

In sum, Rule 180(b)(4) outlines procedural requirements by which a non-attorney government employee must be trained, designated, and "supervised" if appearing before this Court. Here, the government interprets Rule 180 to allow a non-attorney, active law enforcement park ranger employed outside the Department of Justice ("DOJ") to prosecute cases on behalf of the United States. Like all local rules, however, Rule 180(b)(4) is valid only if it complies with controlling law and principles of justice. *See Frazier*, 482 U.S. at 645–46.

### III.   LEGAL STANDARD

Under Federal Rule of Criminal Procedure 12(b)(1), a defendant "may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." *See United States v. Plascencia-Orozco*, 852 F.3d 910, 920 (9th Cir. 2017).

Propeck / Motion to Disqualify National Park Service
and Memorandum of Points and Authorities

When addressing issues involving statutory interpretation, courts must "begin[] with the statutory text, and end[] there as well if the text is unambiguous." *United States v. Nishiie*, 996 F.3d 1013, 1020 (9th Cir. 2021) (quoting *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004)); *see also United States v. Brown*, 42 F.4th 1142, 1146 (9th Cir. 2022) ("This means we look at the words in the statute and apply "'their ordinary, contemporary, common meaning.'" (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979))).

A district court's supervisory authority includes the power to disqualify counsel when doing so is necessary to "maintain public confidence in the legal profession and assist[] in protecting the integrity of the judicial proceeding." *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 721 (7th Cir. 1982); *see Certain Underwriters at Lloyd's London v. Argonaut Ins. Co.*, 264 F. Supp. 2d 914, 918 (N.D. Cal. 2003) ("The right to disqualify counsel is a discretionary exercise of the trial court's inherent powers."). In exercising such authority, "[t]he paramount concern is the judiciary's 'independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings *appear fair to all who observe them.*'" *United States v. Urutyan*, 564 F.3d 679, 686 (4th Cir. 2009) (quoting *Wheat v. United States*, 486 U.S. 153, 160 (1988) (emphasis added)).

Attorneys within the DOJ are charged with the statutory duty of prosecuting cases on behalf of the United States. *See* 28 U.S.C. § 516.

### IV.  ARGUMENT

The foundational structure of the criminal legal system is integral to, and cannot be divorced from, the protection of core, individual rights. An NPS law enforcement ranger and a federal prosecutor serve two separate functions within this structure, and the government's practice of merging the two creates an unlawful system of police prosecution.

The role of the federal prosecutor is distinct, and their authority is unambiguously delineated by statute. *See* 28 U.S.C. § 516 (reserving the United States' litigation to the DOJ); *see generally* 28 U.S.C. § 501–530(D) (defining the authority of the Attorney General). Federal prosecutors are "designated by statute as the President's delegates to help him discharge his

4

constitutional responsibility to 'take Care that the Laws be faithfully executed.'" *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (quoting U.S. Const., Art. II, § 3). As such, federal prosecutors exercise broad discretion within the boundaries of their legal obligations.

By allowing law enforcement rangers to prosecute the instant case, the United States has abdicated its prosecutorial duties and improperly delegated the DOJ's authority to NPS employees. As required by statute, the government cannot delegate such authority absent legal authorization. The government purports to proceed under Rule 180, but the Local Rules must be read in conjunction with the controlling statutory text. Although Rule 180(b)(4) outlines some limited requirements for non-attorney practitioners appearing before the Court, it cannot be interpreted as authorizing non-DOJ employees—let alone law enforcement rangers actively policing the jurisdiction—to prosecute cases on behalf of the United States. Adopting such an interpretation would not only conflict with the plain language of the DOJ's authorizing statutes, but would also distort the appearance of justice by creating a system in which non-attorney, active police officers are empowered to arrest, charge, investigate, negotiate with, and advocate in court against individuals on behalf of the United States.

To the extent the local rules support the government's practice, however, Rule 180 is unlawful. Local rules governing procedure and general practice before the Court cannot supersede statutory authority. Federal prosecutorial authority is unique to the Attorney General, and absent legal authorization, a local rule cannot be used to delegate this power to non-attorney law enforcement officers or other NPS employees external to the DOJ.

This Court should disqualify the NPS from prosecuting Mr. Propeck because failing to do so would (A) empower the NPS to exceed its law enforcement authority and exercise the DOJ's prosecutorial power in violation of 28 U.S.C. § 516; (B) employ an unlawful interpretation of the local rules; and (C) distort the appearance of justice.

//

//

**A. The United States Unlawfully Delegated its Prosecutorial Authority to Active Law Enforcement Rangers in Violation of 28 U.S.C. § 516, Rendering Any Prosecutorial Conduct Taken by the NPS *Ultra Vires*.**

**1. The DOJ is Required by Statute to Litigate on Behalf of the United States.**

The conduct of federal government litigation is reserved to the DOJ. 28 U.S.C. § 516. Indeed, § 516 requires, "[e]xcept as otherwise authorized by law, the conduct of litigation in which the United States, an agency, or officer thereof is a party, or is interested, and securing evidence therefor, is reserved to officers of the Department of Justice, under the direction of the Attorney General." Because the United States Attorney's Office ("USAO") has allowed the NPS to prosecute Mr. Propeck, this case is grounded in an impermissible delegation of statutory authority.

When interpreting a statute's plain text, "the sole function of the courts . . . is to enforce it according to its terms." *Connell v. Lima Corp.*, 988 F.3d 1089, 1097 (9th Cir. 2021) (quoting *Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004) (citations omitted))). Section 516 is unambiguous as it provides that any "conduct of litigation" on behalf of the United States must be "reserved to officers of the Department of Justice" unless "otherwise authorized by law." Absent legal authorization stating otherwise, any prosecution against Mr. Propeck must be reserved to the DOJ because the United States is the plaintiff in this matter. *Id.*; *see also* 28 U.S.C. § 519 (providing that the Attorney General shall supervise all litigation in which the United States is a party unless otherwise authorized by law); *In re Persico*, 522 F.2d 41, 54 (2d Cir. 1975) (explaining the power to conduct federal criminal litigation is "an executive function within the exclusive prerogative of the Attorney General") (quotation marks omitted).

The court may also look to statutory history and structure to inform its interpretation of the text. *See Snyder v. United States*, 603 U.S. 1, 10–12 (2024). Here, the statutory structure reinforces the text's unambiguous meaning in further clarifying the prosecutor's authority, and identifying when delegation might be appropriate.

Looking to the chapter governing United States Attorneys specifically, 28 U.S.C. § 547(1) provides that unless "otherwise provided by law, each United States attorney" is charged with prosecuting "all offenses against the United States[.]" *See United States v. Baldwin*, 541 F. Supp. 2d 1184, 1189 (D.N.M. 2008) ("With a few exceptions, the United States attorneys have been

delegated the authority to make the important and sensitive decisions that drive criminal prosecutions."). As made clear under § 516, any decision to delegate the DOJ's authority to litigate cases in which the United States is a party must be made pursuant to legal authorization.

Anticipating that delegation may at times be necessary, Congress provided such legal authority for certain non-DOJ agencies to represent the government in litigation. *See, e.g.*, 26 U.S.C. § 7452 ("The Secretary shall be represented by the Chief Counsel for the Internal Revenue Service or his delegate in the same manner before the Tax Court as he has heretofore been represented in proceedings before such Court."); *Leonard v. U.S Postal Service*, 489 F.2d 814, 816–18 (1st Cir. 1974) (acknowledging the DOJ's authority under 28 U.S.C. § 516 and explaining a statutory exception under the Postal Reorganization Act that allowed the Postal Service to settle certain litigation over the DOJ's objection). No analogous act of Congress allows the NPS to conduct litigation on behalf of the United States.

Notably, Congress has also provided for certain delegations of authority within the DOJ itself. In the statutory section titled "Delegation of authority[,]" Congress explains the Attorney General may authorize "the performance by any other officer, employee, or agency *of the Department of Justice* of any function of the Attorney General." 28 U.S.C. § 510 (emphasis added). And under § 515(a), the Attorney General possesses the statutory authority to direct an "officer of the *Department of Justice*, or any *attorney* specially appointed by the Attorney General under law" to "conduct any kind of legal proceeding, civil or criminal . . . which United States attorneys are authorized to conduct[.]" *Id.* (emphases added).

As alluded to in § 515(a), the Attorney General may appoint "special attorneys"—subject to removal by the Attorney General—"to assist United States attorneys when public interest so requires[.]" 28 U.S.C. § 543; *see also United States v. Libby*, 429 F. Supp. 2d 27, 33 (D.D.C. 2006) (upholding the Deputy Attorney General's exercise of authority in delegating authority to the Special Counsel to investigate and prosecute given a believed conflict of interest).

The DOJ's own Office of Legal Counsel has recently interpreted these provisions to allow for appointment of attorneys from other agencies to work as special attorneys in the DOJ. When

7

the United States Attorney for the District of Columbia requested additional attorneys serve as Special Assistant United States Attorneys ("SAUSAs") to "assist in prosecuting misdemeanors[,]" the Office of Legal Counsel explained its position on the government's authority to proceed. *Detailing Att'ys to the DOJ. to Serve As Immigr. Judges & Special Assistant United States Att'ys*, 49 Op. O.L.C. __ (Oct. 23, 2025), 2025 WL 3251684, at *2. The government itself reasoned that federal law allows "interagency details of *lawyers*" to serve as SAUSAs, and although § 516 reserves litigation to the DOJ, § 543(a) permits the Attorney General to "appoint *attorneys* to assist United States Attorneys 'when the public interest so requires.'" *Id.*, at *3–4 (quoting 28 U.S.C. § 543(a)) (emphases added).

These provisions confirm not only that Congress set out specific instructions limiting the delegation of prosecutorial authority, but also that allowing non-attorney NPS representatives and law enforcement officers to litigate on behalf of the United States is not one such exception authorized by law.

### 2. The Department of the Interior May Empower the NPS to Exercise Certain Police Powers—Not Prosecutorial Powers—on its Behalf.

Like federal prosecutors, the NPS law enforcement rangers exercise specified authority prescribed by law. The Secretary to the Department of the Interior ("DOI") is permitted to "designate certain officers or employees" of its Department to "maintain law and order and protect individuals and property within System units." 54 U.S.C. § 102701(a)(1). Because the NPS is an agency within the DOI, the Secretary may authorize the NPS law enforcement rangers to exercise certain police powers. Specifically, law enforcement rangers are permitted to carry firearms, arrest individuals, execute warrants, and conduct investigations. *Id.* § 102701(a)(2).

Notably absent is any congressional authority that would permit law enforcement officers to exercise prosecutorial authority or fulfill duties reserved to the DOJ. Any prosecutorial action taken by active law enforcement rangers within the NPS is thus *ultra vires* and unlawful.

### B.   The Local Rules Cannot Authorize the United States to Delegate its Prosecutorial Authority to NPS.

Without citing any statutory authority validating its delegation, the United States relies on Rule 180 to employ the NPS to fulfill the DOJ's prosecutorial responsibilities. But Rule 180 does not explicitly authorize the DOJ to hand over its duties to an external agency, and the local rules must be read in harmony with controlling law. The government's Rule 180 practice clearly conflicts with 28 U.S.C. § 516, which requires legal authorization for non-DOJ employees to conduct the United States' litigation, as well as with § 547, which requires legal authorization for non-United States attorneys to prosecute offenses against the United States in their district. Because Rule 180 does not constitute such legal authority, it fails to provide a valid basis upon which the NPS may prosecute Mr. Propeck.

If Rule 180(b)(4) can be interpreted to sanction the government's practice here, the rule itself must be deemed unlawful and invalidated. Although a district court has "broad discretion to adopt local rules that are necessary to carry out the conduct of its business[,]" local rules must be consistent with the United States Constitution; any Act of Congress; the federal rules of procedure; the procedures prescribed by the Supreme Court; and the "the principles of right and justice." *Frazier*, 482 U.S. at 645–46.

The government's act of delegating its prosecutorial authority to a law enforcement ranger who is simultaneously acting as a Rule 180 NPS representative in this case is part of its regular practice in misdemeanor cases arising out of Yosemite National Park.[2]

This practice has entrenched a system of police prosecution which, as seen here, is also devoid of supervision.[3] In fact, Rule 180 does not even demand critical attorney supervision. As

---

[2] In addition to violating its statutory obligation to represent the United States, it is important to note that the USAO's practice may also conflict with the federal rules. Federal Rule of Criminal Procedure 58, which governs petty offenses and other misdemeanors, explicitly assigns certain responsibilities to the "attorney for the government." Fed. R. Crim. P. 58(b)(2)(H), (d)(3), (g)(2)(B). *Cf. ABS Entertainment, Inc. v. CBS Corporation*, 908 F.3d 405, 427 (9th Cir. 2018) ("Local Rules cannot be incompatible with Federal Rules.").

[3] As confirmed at a recent bench trial, none of the government's witnesses had contact with an AUSA or DOJ employee, and their government communication was limited to NPS representatives. *United States v. O'Brien*, 6:25-mj-00015-HBK, ECF No. 25, Audio at 9:28:21–9:28:53, 9:53:46–9:54:13, 10:46:39–

defined under Rule 180(b)(4)(A)(iv), "supervision" merely requires the USAO to be "available to answer questions of any [designated Rule 180 representative]." The government's unlawful delegation and complete abdication of its prosecutorial duties is further proof of its utter failure to fulfill the duty Congress entrusted to the DOJ. This is not the first time the USAO's absence has come before this Court. *See United States v. Marsh*, No. 1:24-MJ-00092-HBK, 2024 WL 4667801, at *3 n.4 (E.D. Cal. Nov. 4, 2024) ("The Court has previously expressed its concern with what it perceived as a lack of supervision, training, and/or oversight by the U.S. Attorney Supervisor with the designated NPS Rule 180(b)(4) employee.").

The docket in this case further confirms the lack of involvement by the DOJ, as a Rule 180 NPS representative is designated as an AUSA and noticed as a lead attorney of record. Thus, as lead counsel, the non-attorney, Rule 180 representative and active law enforcement officer exercises prosecutorial functions and discretion by:

- reviewing the conduct of her law enforcement colleagues holding the same officer position;
- finalizing charges recommended by those colleagues;
- supervising those colleagues' investigation and discovery production;
- representing the United States in court;
- engaging in plea negotiations;
- and litigating motions.

*See* ECF Nos. 1, 8, 11, 13.

Notably, undersigned counsel was unable to identify a similar practice of police prosecution in a federal district outside the Eastern District of California. This is consistent with the legal framework through which a local rule may neither run afoul of the congressional directive primarily reserving litigation on behalf of the United States to the DOJ, nor constitute legal authorization expressly required under 28 U.S.C. § 516.

---

10:47:24, 11:18:41–11:19:05 (E.D. Cal. June 29, 2026).

### C. Upholding a System of Police Prosecution Contravenes Foundational Principles of Fairness and Distorts the Appearance of Justice.

Any interpretation by the government allowing the NPS law enforcement rangers to investigate, arrest, and prosecute individuals would not only be inconsistent with 28 U.S.C. § 516, but also infringe upon core "principles of right and justice[.]" *Frazier*, 482 U.S. at 645–46. More specifically, upholding such a practice would establish a dual role in which non-attorney, active law enforcement officers are authorized to exercise broad prosecutorial discretion in determining charges and litigating cases on behalf of the United States through any trial or potential sentencing. NPS employees would do so while serving the DOI and exercising their law enforcement powers as officers authorized to generally police visitors to Yosemite National Park. Allowing such a practice to continue within this jurisdiction would erode public confidence and threaten the integrity of legal proceedings for at least three reasons.

First, a law enforcement ranger is effectively a police officer, and a police officer is not a federal prosecutor. These roles are necessarily separate for good reason, and blurring the line between the two effectively distorts the appearance of justice.

Second, a core tenet of criminal proceedings includes a presumption of regularity. This principle is grounded in the understanding that because of their position, the federal prosecutor exercises the immense power of the federal government in a manner that is fair and in pursuit of justice. When a non-attorney prosecutor or law enforcement officer exercises this authority, however, no such presumption applies.

Last, this presumption of regularity is reinforced by a specific code of ethics binding every attorney, as well as other protections ingrained in the criminal legal system. Built into this system is a set of mechanisms by which police officers' decisions are reviewed, and attorney disciplinary action may be triggered, thus providing a framework of accountability to help safeguard the integrity of judicial proceedings. The NPS representatives are not bound by the same rules of ethics, because while Rule 180(b)(4)(C) requires certain standards, a non-attorney police-prosecutor is not subject to discipline by a state bar. Thus, when a police officer is empowered to

11

prosecute, an individual accused of a criminal offense is stripped of any meaningful ability to reinforce established safeguards.

### 1. A Law Enforcement Ranger is Not a Federal Prosecutor.

A prosecutor "is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all[.]" *United States v. Bowen*, 799 F.3d 336, 354 (5th Cir. 2015) (quoting *Berger v. United States*, 295 U.S. 78, 88) (1935)).  A prosecutor's interest in a criminal matter is *not* to win or represent individuals, but "that justice shall be done." *Id.*

As law enforcement personnel within the DOI, however, the NPS rangers are charged with "maintain[ing] law and order and protect[ing] individuals and property within System units."  54 U.S.C. § 102701(a)(1); *see also* "National Park Service Law Enforcement Ranger Program," U.S. Department of the Interior[4] (explaining law enforcement rangers "work to fulfill the NPS mission by protecting the natural and cultural resources parks were established to preserve, and by keeping people safe when they visit.").  Just as the DOJ pursues various policy objectives in pursuit of justice, the NPS outlines its own policy objectives to achieve its specific mission.

### 2. The Presumption of Regularity Does Not Apply to a Law Enforcement Ranger.

While each role serves a distinct function, it is *only* the federal prosecutor who represents the United States and litigates under a presumption of regularity. *United States v. Sellers*, 906 F.3d 848, 853 (9th Cir. 2018).  In fulfilling their mandate, prosecutors may exercise significant discretion within the boundaries of their ethical obligations.  *See United States v. Banuelos-Rodriguez*, 215 F.3d 969, 976 (9th Cir. 2000) ("Courts generally have no place interfering with a prosecutor's discretion regarding whom to prosecute, what charges to file, and whether to engage in plea negotiations.").  Courts have determined this presumption of regularity applies to prosecutorial decisions and provides "'a measure of protection (and confidentiality)' to prosecutors' 'deliberative processes, which are covered by strong privileges.'" *Sellers*, 906 F.3d at 853 (quoting *United States v. Davis*, 793 F.3d 712, 720 (7th Cir. 2015) (en banc)).

---

[4] Available at https://www.doi.gov/oles/national-park-service-law-enforcement-ranger-program.

Critically, there is a "'special solicitude courts have shown to prosecutors' discretion' that 'does not inevitably flow to the actions of law enforcement.'" *Id.* at 854 (quoting *United States v. Washington*, 869 F.3d 193, 216, 219 (3d Cir. 2017)). This makes sense given the extent of the prosecutor's authority. *See also Bordenkircher v. Hayes*, 434 U.S. 357, 365 (1978) ("There is no doubt that the breadth of discretion that our country's legal system vests in prosecuting attorneys carries with it the potential for both individual and institutional abuse."). As summarized by the Ninth Circuit, law enforcement "agents occupy a different space and role in our system than prosecutors; they are not charged with the same constitutional functions, and their decisions are more often scrutinized by—and in—courts." *Sellers*, 906 F.3d. at 853. Thus, a system merging the two roles and authorizing active law enforcement rangers to both arrest *and* prosecute individuals lacks any presumption of regularity.

### 3. A System of Police Prosecution is Devoid of the Safeguards Underpinning the Foundational Structure of Criminal Law.

The government's practice of police prosecution erodes public confidence in judicial proceedings given the lack of accountability through review, protection of a specific code of ethics, and other standardized obligations. It is impossible to reconcile how a system tethered to fairness could consolidate two intentionally separate roles, eliminate critical review, and expand authority cabined by statute—all while maintaining the same appearance of justice. *See United States v. Edwards*, 154 F.3d 915, 921 (9th Cir. 1998) (discussing the "broader concern for public confidence in the administration of justice," and implementation of "the maxim that 'justice must satisfy the appearance of justice.'") (quoting *United States v. Johnston*, 690 F.2d 638, 643 (7th Cir. 1982)).

a. Absence of Review

Embedded in the general order of criminal legal proceedings are certain mechanisms that aid in protecting public confidence in the judicial process. For example, under standard procedure, law enforcement officers make arrests, and prosecutors determine charges. In a case "referred to the United States Attorney's Office for review and prosecution," courts "assume that the United States Attorney exercised proper discretion to prosecute in federal court[]" and thus relies upon a

13

presumption of regularity in ensuring a criminal case has passed constitutional muster. *United States v. Robinson*, 967 F.2d 287, 290 (9th Cir. 1992) (finding no due process violation when the police officer referred the case to the federal prosecutor instead of the state prosecutor and assuming this decision was reviewed by the USAO), *recognized as overruled on other grounds by Ortega-Mendez v. Gonzales*, 450 F.3d 1010, 1018–20 (9th Cir. 2006).

A system that authorizes the same actors who make arrests to also finalize charges removes an essential mechanism for review. Such review is critical. *See generally Kirby v. Illinois*, 406 U.S. 682, 689 (1972) ("The initiation of judicial criminal proceedings is far from a mere formalism. It is the starting point of our whole system of adversary criminal justice. For it is only then that the government has committed itself to prosecute, and only then that the adverse positions of government and defendant have solidified."). Including such institutional review is especially important given that prosecutorial discretion exercised in determining whether to prosecute "is particularly ill-suited to judicial review." *Wayte v. United States*, 470 U.S. 598, 607 (1985).

Without review by an attorney, a law enforcement officer's decision to arrest or issue a specific citation is more likely to automatically translate into a criminal case.[5] Even if an attorney later intervenes, or an individual is ultimately acquitted, improper prosecutorial decisions by non-attorney practitioners cause harm by needlessly subjecting an individual to criminal prosecution. *Cf. Young v. United States ex rel. Vuitton*, 481 U.S. 787, 814 (1987) ("Between the private life of the citizen and public glare of criminal accusation stands the prosecutor. . . . Even if a defendant is ultimately acquitted, forced immersion in criminal investigation and adjudication is a wrenching disruption of everyday life. For this reason, we must have assurance that those who would wield this power will be guided solely by their sense of public responsibility for the attainment of justice.").

The nonsensical implications of delegating prosecutorial authority to police officers are displayed here. As this Court is aware, there is a history regarding park rangers and disagreements

---

[5] The serious risk of "[o]vercriminalization in [f]ederal [r]egulations" was broadly addressed in an executive order issued by President Donald Trump. Exec. Order No. 14,294, 90 Fed. Reg. 20,363 (May 14, 2025).

concerning BASE jumping.  *See United States v. Nunn,* No. 6:20-PO-00742-HBK, 2024 WL 814492, at *2 (E.D. Cal. Feb. 27, 2024) (discussing the NPS permit system and published statements regarding BASE jumping in Yosemite).  Given the unique nature of the government's practice in Yosemite National Park, there is no law addressing conflicts of interest to ensure that law enforcement rangers are prohibited from litigating their colleagues' conduct, or exercising prosecutorial influence in cases they policed, when later operating under their Rule 180 authority.  And as the Ninth Circuit makes clear, "law enforcement officers do not enjoy the same strong presumption that they are constitutionally enforcing the laws that prosecutors do."  *Sellers*, 906 F.3d at 853.

To assume active law enforcement officers view their colleagues' policing decisions through the lens of a federal prosecutor defies logic.  To place such an expectation on officers is also unfair to them, as the two sets of expertise are meant to be separate.  Indeed, an integral part of criminal procedure allows for the litigation of policing decisions to be argued between attorneys and decided by a judge.

In consolidating the police officer and prosecutor roles, the government's practice distorts the appearance of justice and creates other practical issues.  For example, even the difference in attire between an AUSA and a law enforcement ranger can threaten fairness.  *See Holbrook v. Flynn*, 475 U.S. 560, 570–71 (1986) ("We do not minimize the threat that a roomful of uniformed and armed policemen might pose to a defendant's chances of receiving a fair trial.").  Despite such concerns, *see* Declaration of Lisa N. Lumeya, ¶ 3, the US Attorney's Office still delegates its prosecutorial duties to NPS representatives dressed in law enforcement uniforms when appearing on behalf of the United States, *see* Declaration of Jonathan McKinney, ¶ 3–4.

Another practical issue can be seen in subpoena service.  Because the majority of individuals with court-appointed counsel in Yosemite National Park are represented by the Federal Defender's Office, defense investigators have worked closely with NPS law enforcement rangers when serving court-issued subpoenas.  In doing so, defense investigators and NPS law enforcement rangers have developed a system to streamline service and avoid the inconvenience of disrupting

a ranger's privacy at their residence. Declaration of Vincent Lee, ¶ 4. When recently effectuating service under this system, a supervisory park ranger asked a defense investigator to copy the law enforcement ranger email on a message regarding the subpoena. *Id.* ¶ 5. The supervisory ranger also suggested the defense investigator do so moving forward. *Id.* This is problematic as subpoenas are issued under seal, and the NPS Rule 180 representatives include active law enforcement rangers who could have access to the law enforcement email account.

As this Court is aware, the United States' Rule 180 practice has also led to issues regarding discovery. *See Marsh*, 2024 WL 4667801, at *3 ("Although the Court finds that a dismissal with prejudice to be unwarranted in these circumstances, the Court would be remiss if it did not take this opportunity to both warn the government that further discovery violations will not be tolerated and to advise the government that it would be prudent to implement formal procedures for handling misdemeanor cases to avoid confusion and mismanagement in the future."); *see also United States v. O'Brien*, 6:25-MJ-00015-HBK, ECF No. 17, Def. Reply Mot., at 3 n.1 (E.D. Cal. June 17, 2026) (documenting the NPS's late discovery production); *United States v. Gearheart*, 6:23-MJ-00006-HBK, ECF No. 63, Def. Mot., at 3 (E.D. Cal. Mar. 5, 2025) (same); *United States v. Marsh*, 1:24-MJ-00092-HBK, ECF No. 16, Def. Reply Mot., at 4 (E.D. Cal. Sept. 27, 2024) (discussing late NPS discovery shared in *United States v. Kidd*, 6:24-MJ-00016-HBK; and *United States v. Pena*, 6:24-PO-00390-HBK).

That the NPS-DOI manages discovery instead of the USAO has led to other issues more broadly, because the Rule 180 discovery production fails to adhere to the USAO's established protocol. Declaration of Julie Butler, ¶ 6. This is problematic because such protocol helps ensure production is timely based on the Court's order. *Id.* ¶ 4. Following this regulated system also "ensures that the receiving party can review the evidence and determine whether the production is complete and accurately reflects the materials intended to be disclosed." *Id.* Due to the nature of federal cases, it is not unusual that discovery includes information from other departments and agencies. In those circumstances, however, "[t]hese protocols are respected[.]" *Id.*

According to the government, the NPS office does not have access to the same system used

16

by the USAO. *Id.* ¶ 6. Again, the NPS is external to the DOJ, and outsourcing the DOJ's duty to manage a responsibility so critical as discovery production is yet another example of the government's untenable practice. The USAO has adhered to its own discovery protocol regarding other misdemeanor dockets, *id.* ¶ 5, but it chooses not to do so here by instead delegating its responsibilities to non-attorney NPS representatives without access to the DOJ's internal system.

b.    Absence of a Standardized System of Ethics

When a non-attorney represents the United States in court, the practitioner is not subject to a standardized code of legal ethics. This is significant as a federal prosecutor's ethical standards are delineated by statute. *See* 28 U.S.C. § 530B (providing ethical standards for attorneys for the government, including designated and appointed counsel authorized by law). And unlike attorneys supervising certified law students who "assume personal professional responsibility" for the student's work, L.R. 181(e)(3), Rule 180(b)(4) does not hold an assigned AUSA professionally responsible for any actions of the non-attorney, Rule 180 representative.

As licensed attorneys, federal prosecutors are bound to the obligations of their state bar. *See* L.R. 180(a–b) (requiring that licensed attorneys appearing before this Court maintain an active bar membership and remain in good standing). One foundational obligation under the American Bar Association ("ABA") Model Rules of Professional Conduct requires attorneys to provide competent representation. ABA Model Rule 1.1 ("A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."). Given their role, prosecutors also have specific obligations. *See* ABA Model Rule 3.8: Special Responsibilities of a Prosecutor.

Due to their differing function, law enforcement officers instead serve under a separate code of ethics and obligations specific to their authority. Principles such as the advocate-witness rule directly apply to *attorneys* and are aimed at "protecting the integrity of the fact-finding process" by compelling a prosecutor to choose between proceeding as counsel or a potential witness. *United States v. Batchler*, No. 2:16-cr-00292, 2017 WL 1745025, at *2 (D. Nev. May 2,

17

2017) (citing *United States v. Prantil*, 764 F.2d 548, 552–54 (9th Cir. 1985)); *see* ABA Model Rule 3.7: Lawyer as Witness. Without requiring prosecutors to be barred attorneys, the non-DOJ employees represent the United States without being subject to the same rules and disciplinary procedure. Unlike with a licensed attorney, there is no state bar governing police-prosecutors to which an individual may report issues regarding court proceedings.[6]

The current system not only eliminates a critical level of transparency, but also removes one of the most direct and meaningful forms of accountability protecting public confidence in legal proceedings. Notably, allowing a non-attorney to represent the United States without being subject to such discipline has previously led to an individual's disqualification. *See United States ex rel. Schwartz v. TRW Inc.*, 118 F. Supp. 2d 991, 995 (C.D. Cal. 2000) (disqualifying a non-attorney from representing the government in a *qui tam* action, noting that non-attorneys do not face the threat of serious consequences for violating ethical constraints of which they "may have no knowledge of and no obligation"); *see also Jones v. Niagara Frontier Transp. Auth.*, 722 F.2d 20, 22 (2d Cir. 1983) (affirming dismissal of a case in which a corporation sought to appear through a non-attorney, noting "In addition to lacking the professional skills of a lawyer, the lay litigant lacks many of the attorney's ethical responsibilities, *e.g.*, to avoid litigating unfounded or vexatious claims.").

The government's current system, empowering non-attorney prosecutors within the NPS, also eliminates the clear application of the DOJ's Manual and internal system of accountability. Although the DOJ has an "obligation to its lawyers and to the public to prevent prosecutorial misconduct[,]" it is unclear how the government's "duty to own up" to improper conduct applies when the non-attorney prosecutor is external to the DOJ. *United States v. Lopez-Avila*, 678 F.3d 955, 964–65 (9th Cir. 2012) (noting that the DOJ's Office of Professional Responsibility holds the responsibility of investigating federal prosecutors' alleged misconduct).

In addition, these practical implications do not even begin to account for the impact of

---

[6] As a separate agency, the NPS has its own procedure through which individuals may submit a complaint against an NPS law enforcement officer to the NPS Office of Professional Responsibility, *see* https://www.nps.gov/orgs/1358/submit-a-complaint.htm. This complaint process concerns law enforcement officers—not police-prosecutors.

departing from the DOJ's hiring policies. Indeed, the DOJ cannot even use "funds available to the Attorney General" to compensate a domestic attorney unless she maintains an active license to practice law. 28 U.S.C. § 530C(c)(1). Prior to obtaining their bar license, the prosecutor is required to attend law school. Before an attorney is retained as a federal prosecutor, "[o]ne of the most important responsibilities of the United States Attorney" and senior deputies is "ensuring that line attorneys are aware of the special ethical responsibilities of prosecutors, and that they resist the temptation to overreach." *United States v. Kojayan*, 8 F.3d 1315, 1324 (9th Cir. 1993). This makes sense given federal prosecutors "are subject to constraints and responsibilities that do not apply to other lawyers; they must serve truth and justice first." *Lopez-Avila*, 678 F.3d at 964.

Instead, according to Rule 180(b)(4)(A)(ii), a non-attorney representative is only required to obtain *four hours* of legal training every two years. But "training to impart awareness of constitutional rights is an essential function of an office . . . whose administration of justice the public [relies on]." *See Kojayan*, 8 F.3d at 1324 (quoting *United States v. Foster*, 985 F.2d 466, 469 (9th Cir. 1993)). Yet here, with such limited training, Rule 180 representatives may obtain authorization to prosecute individuals with the full power of the federal government. Such authority spans the entirety of the prosecution, even including advocating for custodial sentences should an individual be convicted. *See id.* (expressing concern about "the great danger in untrained lawyers wielding public power" (quotation marks omitted)).

No matter the substance, four hours of condensed legal training simply cannot be deemed sufficient to equip non-attorney police officers to satisfy the rules of legal ethics and prosecute individuals on behalf of the United States. Nor should it. The DOJ has established strict requirements to ensure its prosecutors are able to fulfill its mandate. The DOJ is required by statute to litigate on behalf of the United States, and it cannot abdicate this duty in misdemeanor cases.

### D. This Court Should Exercise its Supervisory Power to Remedy the Government's Unlawful Delegation by Disqualifying the NPS From Participating in the Prosecution of the Instant Case.

The NPS is prosecuting Mr. Propeck on behalf of the United States. The USAO is included on the docket in name, but the government's actions show the NPS is responsible for determining

charges, ECF No. 1; representing the United States in court, ECF No. 8; and managing plea negotiations, ECF No. 11. Although disqualification of an entire office is generally considered under a heightened standard, the unique posture of this case renders disqualification the sole remedy outside dismissal. Unlike in most criminal cases where the question of disqualification would involve a licensed attorney, the analysis before this Court is whether disqualification of an agency is warranted to remedy the government's unauthorized delegation of federal prosecutorial power.

Given the government's unlawful delegation, an order disqualifying the NPS from further prosecution against Mr. Propeck is necessary to protect the integrity of judicial proceedings and—at minimum—satisfy the appearance of justice. *See United States v. Giraud*, 160 F.4th 390, 406–07 (3d Cir. 2025) (affirming the district court's disqualification order because the Attorney General's delegation exceeded her statutory authority and the prosecutor was prevented by statute from assuming the role of Acting United States Attorney); *see also Offutt v. United States*, 348 U.S. 11, 13 (1954) ("These are subtle matters, for they concern the ingredients of what constitutes justice. Therefore, justice must satisfy the appearance of justice.").

## V.    CONCLUSION

Based on the foregoing, Mr. Propeck respectfully requests that this Court find the United States unlawfully delegated its authority to active law enforcement officers external to the DOJ, and disqualify the NPS from further prosecutorial action.

Respectfully submitted,

HEATHER E. WILLIAMS
Federal Defender

Date: July 28, 2026

*/s/ Lisa Ndembu Lumeya*
LISA N. LUMEYA
Assistant Federal Defender
Attorney for Defendant
JACK PROPECK

20