HEATHER E. WILLIAMS, CA Bar #122664
Federal Defender
LISA N. LUMEYA, DC Bar #90017392
PETER MCGUIRE, CA Bar #298869
Assistant Federal Defenders
Office of the Federal Defender
2300 Tulare Street, Suite 330
Fresno, CA 93721-2226
Telephone: (559) 487-5561
Fax: (559) 487-5950

Counsel for Defendant
JACK M. PROPECK

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>vs.<br>JACK M. PROPECK,<br>Defendant. | Case No. 6:25-mj-00056-HBK<br>**MOTION TO RECONSIDER ORDER DENYING DEFENDANT'S MOTION TO DISQUALIFY THE NATIONAL PARK SERVICE**<br>Date: October 19, 2026<br>Judge: Hon. Helena Barch-Kuchta |

Please take notice that Jack M. Propeck, through undersigned counsel, hereby moves this Court to reconsider its September 15, 2026, Order Denying Defendant's Motion to Disqualify the National Park Service, ECF No. 22.

## MOTION

Mr. Propeck, by and through his counsel of record, Assistant Federal Defenders Lisa N. Lumeya and Peter McGuire, hereby moves this Court to reconsider its Order denying Mr. Propeck's motion to disqualify the National Park Service from further prosecutorial action in the instant case under the Court's supervisory power. This motion is made pursuant to Federal Rule of Criminal Procedure 12, 47, Eastern District of California Local Rule Crim. 430.1, and such other statutory and constitutional rules as may be applicable.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

On July 28, 2026, Mr. Propeck filed a motion requesting that the Court disqualify the National Park Service ("NPS") from exercising the Department of Justice's ("DOJ") prosecutorial authority reserved to the United States Attorney's Office ("USAO"), 28 U.S.C. §§ 516, 547(1). ECF No. 16. The government filed its opposition on August 4, 2026, ECF No. 17, and Mr. Propeck filed a reply on August 11, 2026, ECF No. 18. This case is set for a bench trial on October 19, 2026. ECF No. 21.

On September 15, 2026, this Court issued an Order Denying Mr. Propeck's Motion to Disqualify. In doing so, the Court emphasized the ruling did "not endorse a practice in which NPS employees make or effectively control prosecutorial decisions while an AUSA is merely available for consultation." ECF No. 22 at 9. While shifting the burden to Mr. Propeck to prove impermissible delegation and finding his record insufficient, this Court left open the possibility that a different record could warrant the requested disqualification remedy. *Id.* at 8–9. Indeed, "this Court maintains the authority to address any improper grants of prosecutorial authority that may occur." *Id.* at 10.

Given this Court's order, as clarified through subsequent orders, and due to additional evidence uncovered, Mr. Propeck moves this Court pursuant to Local Rule 430.1(i) to reconsider its Order in consideration of the attached exhibits that are responsive to this Court's findings.[1]

[1] Mr. Propeck submits the additional arguments and evidence for this Court's reconsideration. In doing so, he reincorporates and renews his arguments as outlined in the underlying motion to disqualify, ECF No. 16, and reply to the government's opposition, ECF No. 18.

## II. ARGUMENT

### A. The USAO Followed its Practice of Delegating Prosecutorial Authority to the NPS in Yosemite Misdemeanor Cases by Authorizing Active Law Enforcement Rangers to Negotiate a Plea Offer on Behalf of the United States.

1. Evidence of USAO Delegation in Mr. Propeck's Case.

In Mr. Propeck's motion challenging the USAO's impermissible delegation of its prosecutorial authority to the NPS, Mr. Propeck identified examples of such delegation in his case. Mr. Propeck also outlined some of the issues associated with a separate system of NPS prosecution established in Yosemite misdemeanor matters like his. One instance of delegation in this case occurred when an NPS representative tendered and negotiated a plea offer.

In Exhibit A attached to his reply, Mr. Propeck presented an excerpt of an email between defense counsel, the then-assigned AUSA, and the Rule 180 NPS representative. In the excerpt, the AUSA asked what the NPS ranger offered, and simultaneously confirmed the government's position was whatever this ranger had previously determined. ECF No. 18-3, Exh. A ("What did [the Rule 180 NPS representative] say his understanding was? If he said 18 months then that's the position."). This Court found that a Rule 180 NPS representative extending a plea offer did not show the NPS "independently negotiated, formulated, modified, or approved the terms of that offer without prior direction and approval of the assigned AUSA." ECF No. 22 at 8.

The Court subsequently elaborated on its findings in two recent orders denying motions to disqualify the NPS in unrelated cases. *See United States v. Paydon*, 6:26-po-0082-HBK, ECF No. 19 (E.D. Cal. Sept. 30, 2026); *United States v. Pruett*, 6:26-po-00169-HBK, ECF No. 18 (E.D. Cal. Sept. 29, 2026). In both orders, this Court explained that the AUSA's communication could be understood as "establish[ing] the Government's position and [] confirming whether the designee accurately conveyed it[]" as opposed to "establish[ing] that the offer originated with, or was authorized by, someone other than the [USAO] prosecutor[,]" nor "that the Local Rule 180 designee exercised independent prosecutorial discretion rather than serving as an intermediary who

conveyed terms authorized by the AUSA." *Paydon*, 6:26-po-0082-HBK, ECF No. 19 at 9; *Pruett*, 6:26-po-00169-HBK, ECF No. 18 at 9.

In response to this Court's findings as further explained in its subsequent orders, Mr. Propeck submits Exhibit A, including the entire email communication to clarify any uncertainty by the Court and confirm that the USAO's position "originated with, or was authorized by," *id.*, an active law enforcement ranger. Exh. A, *Emails Regarding Plea*. As shown in the attached exhibit, an active law enforcement ranger extended a plea offer which she stated was "drafted" by another active law enforcement ranger. *Id.* at 4. That plea offer included the name of the active law enforcement ranger who drafted it, and qualified the ranger as counsel for the government. Attempting to negotiate the offer with counsel for the government, undersigned counsel followed up in writing to confirm the USAO's position. *Id.* at 3. Undersigned counsel specifically asked if the position was eighteen months as negotiated by the ranger. *Id.* Within seven minutes, the AUSA responded, "What did [the Rule 180 NPS representative] say his understanding was? If he said 18 months then that's the position." *Id.* This response shows the AUSA adopted what the ranger negotiated, drafted, and communicated to defense counsel. It does not show, or remotely suggest, that the AUSA had previously approved or determined the offer.

About one and a half hours later, the active law enforcement ranger responded to inform everyone—including the AUSA—of the ranger's analysis in determining the government's negotiated offer. *Id.* at 1–2. In doing so, the ranger clarified his reasoning to explain how he independently compared this case to others and why he personally viewed his offer as appropriate. The ranger went even further to clarify he believed his "offer to lower our [or, the government's] recommendation to 18 months is much more than fair" and had he remembered another case resolution earlier, he "would not have offered to reduce" the recommendation. *Id.* at 2. Pursuant to his analysis, the ranger confirmed "that is going to remain the government's position on the matter" and sent a revised plea offer. *Id.*

Nothing in the ranger's email suggests an AUSA had previously established the government's position and directed the ranger to simply communicate it. To the contrary: the

email reflects the ranger's individual thought process and assessment of what might constitute a fair sentence in his own opinion. The email fails to support any inference that a ranger was merely conveying a position formulated by the USAO. Further, the revised offer followed the government's system of including the active law enforcement ranger's name as counsel for the government. This is consistent with the USAO's practice of delegating the DOJ's federal prosecutorial authority to the NPS in misdemeanor cases arising out of Yosemite National Park.

2. The USAO's Delegation of Prosecutorial Authority Here is Consistent with its Practice of Abdicating its Duties in Yosemite Misdemeanor Cases.

Mr. Propeck also submits Exhibit B, the sworn declaration of former Yosemite Legal Officer and Rule 180 NPS representative, Sean O. Anderson, that illuminates many of the points raised in the Court's denial order. This declaration shows that the USAO's delegation of authority, allowing the NPS to determine the criminal charge and negotiate a plea offer in Mr. Propeck's case, is consistent with its longstanding practice of delegation in Yosemite matters. *See* Exh. B, Declaration of Sean O. Anderson, ¶ 3 ("The USAO vested its authority in the Yosemite Legal Office, and I had full authority to prosecute misdemeanor cases in Yosemite.").

As a non-attorney employed by the NPS, Mr. Anderson worked in the Yosemite Legal Office between November 2019 and September 2024. *Id.* ¶ 1. During his tenure, Mr. Anderson prosecuted misdemeanors in Yosemite and "independently determined, drafted, and negotiated plea offers" on behalf of the United States. *Id.* ¶ 4. Although "[t]he USAO was available to consult with if needed," he remained "authorized to extend plea offers and negotiate terms[.]" *Id.* He was required to complete the four-hour legal course referenced under Rule 180(b)(4), *id.* ¶ 2, and thus authorized to extend offers he found "fair and equitable without any consultation." *Id.* ¶ 4.

When practicing under Rule 180, Mr. Anderson "did not have to follow any internal guidelines or seek authorization from the USAO before negotiating or arguing for sentencing terms" so long as his independent offers were within the maximum punishment available by statute. *Id.* ¶ 5. This delegated authority extended so far as to empower the NPS to exercise discretion in arguing for a *term of custody* on behalf of the United States when deemed appropriate

by an individual Rule 180 NPS representative. *Id.* And unless there were specific issues raised by the Court, the NPS representative was not required to seek prior authorization from the USAO to extend or negotiate offers on behalf of the United States. *Id.* Such NPS review of criminal charges also covered criminal complaints. *Id.* ¶ 7.

There were no other limiting guidelines imposed by the USAO, and this unchecked power overwhelmingly extended to other discretionary prosecutorial acts, including the decision to charge. The declaration explains the USAO's standard practice of abdicating its duties in Yosemite misdemeanor matters by authorizing the NPS to review charges brought through violation notices. *See id.* ¶ 6. Through this exercise of prosecutorial discretion, the Yosemite Legal Office independently identified cases with legal deficiencies and determined what charges should proceed or be dismissed for what the Rule 180 officer determined as a lack of probable cause. *Id.* "The USAO gave me full authority to do so as the Legal Officer, and I was not required to seek approval in making these decisions." *Id.*

There is no evidence to show the USAO's practice has changed in any way, and a finding that the NPS does not routinely exercise prosecutorial authority is belied by the record. Indeed, the criminal complaint charging Mr. Propeck was drafted by an active law enforcement officer and approved by another active law enforcement officer practicing law under Rule 180. ECF No. 1 at 6–7. Other than a single email to rubberstamp the NPS's independent plea offer, and a court appearance to defend the NPS's authority to prosecute in Yosemite specifically, the record is devoid of any involvement by the USAO.

Importantly, the only difference between the USAO's systemic abdication of its duties in Yosemite petty offense cases in prior years, and its lack of involvement here, is that *active law enforcement rangers* are prosecuting Mr. Propeck. As Mr. Anderson explained, "[a]ctive law enforcement rangers who arrested the individuals charged would often advocate for the legal office to bring more charges than the legal office found appropriate." Exh. B, Declaration of Sean O. Anderson, ¶ 8. For the reasons previously raised, such a difference in analysis is understandable given the distinct missions, expertise, and ethical obligations separating the police officer and

prosecutor roles. ECF No. 16 at 11–20. In practice, this means that law enforcement officers not only possess the power to transform their own investigation into a federal criminal matter against Mr. Propeck—but they have also exercised the authority of the federal government to negotiate findings of guilt and sentencing recommendations through plea negotiations. *See* ECF No. 1; Exh. A, *Emails Regarding Plea*.

There is no indication of the USAO's involvement in this case other than litigating the USAO's power to authorize the NPS to prosecute on its behalf, and endorsing an NPS plea offer *after* the ranger extended it. Even the USAO's appearance on the electronic docket fails to indicate any affirmative act of involvement in the case. No AUSA ever filed a notice of appearance, and no AUSA signed the complaint as is standard for an AUSA to do in criminal matters including misdemeanors. *See* L.R. 182(a)(2) (requiring an attorney sign and file an initial document to enter an appearance); *see, e.g.*, *United States v. Bonilla*, 1:26-mj-24-SAB, ECF Nos. 1, 9, 12 (E.D. Cal. Mar. 16, 2026, Mar. 18, 2026, and Aug. 6, 2026) (confirming an AUSA reviewed the criminal complaint and entered two notices of appearance to confirm the attorney of record in a class B misdemeanor case).

In sum, this case was initiated through an investigation conducted by active law enforcement rangers within the NPS. ECF No. 1. Active law enforcement rangers then transformed their investigation into a criminal case by submitting, and approving, a criminal complaint. This caused Mr. Propeck to be named as a criminal defendant entitled to constitutional and statutory protections. *Id.* at 6–7. There is no legal basis supporting the USAO's delegation of prosecutorial authority, and the burden must be on the United States to show it has fulfilled its statutory responsibility given the presumption of regularity does not apply to law enforcement officers. *United States v. Sellers*, 906 F.3d 848, 853 (9th Cir. 2018).

The government views its authority as "carte blanche"[2] to use the NPS and Rule 180 as a "force multiplier for the DOJ to deal with cases[.]"[3] Vague descriptions of purported supervision cannot rebut what this record makes clear: the USAO impermissibly delegated its prosecutorial authority to non-attorney, active law enforcement rangers external to the DOJ. *See* Exh. A, *Emails Regarding Plea* (confirming the NPS extended and independently negotiated a plea offer); Exh. B, *Declaration of Sean O. Anderson* (outlining the USAO's standard practice of delegating its prosecutorial authority to the Yosemite Legal Office in misdemeanor cases).

**B. The USAO Failed to Properly Designate NPS Representatives Under Local Rule 180.**

As revealed by recently obtained copies of the NPS designation forms, the USAO has also failed to comply with the requirements outlined by Rule 180. Under Rule 180(b)(4)(B), the government is required to file designations "on a form provided by the Clerk that shall include a verification that the officer, agent, or employee has satisfied the requirements of this Rule." By its own terms, Rule 180 requires the USAO to designate officers pursuant to a *court*-provided form ensuring the officer meets the standards envisioned by the Court. None of the Rule 180 NPS representatives that have exercised prosecutorial authority in this case, however, were designated in compliance with the local rules. Exhs. C-1, *USAO-NPS Certificate of Briana Vollmer*; C-2, *USAO-NPS Certificate of Nancy Phillipe*; C-3, *USAO-NPS Certificate of Christopher Dell Isola*.

Instead of using a court-provided form, the USAO has generated its own form on DOJ letterhead to confirm the NPS prosecutors "completed a four-hour Rule 180/SAUSA training course from the [USAO]." *Id.* Curiously, the forms state that the individual "has been assigned by the employing federal agency or department to appear as a prosecutor on its behalf[.]" *Id.* All Rule 180 officers involved in this case are NPS employees. As stated, the designation forms thus confirm the NPS has assigned NPS employees as prosecutors on its behalf. This cannot be, as the

[2] This Court heard consolidated oral argument in this case and *United States v. Anderson*, 6:25-po-00452-HBK. The transcript to that hearing is filed on the docket in *Anderson*. *Id.*, ECF No. 24, Transcript at 27 (E.D. Cal. Aug. 11, 2026).

[3] *Id.* at 68–69.

NPS does not have legal authority to assign its own employees to prosecute criminal matters. *See* 28 U.S.C. § 516 (reserving the United States' litigation to the DOJ).[4]

In addition, while the forms state that every designated NPS employee will be subject to USAO supervision "within the meaning of Local Rule 180(b)(4)(A)(ii)," it cites only to Rule 180(b)(4)(A)(ii)'s requirement that a designee complete four hours of training every two years to prosecute criminal matters. Supervision is defined under Rule 180(b)(4)(A)(iv) as "availab[ility] to answer questions[.]" And even if the form certified that the USAO would supervise NPS designees within this definition, as this Court noted, such a limited condition fails to show the DOJ controls the litigation. ECF No. 22 at 5.

## III. CONCLUSION

For the foregoing reasons, Mr. Propeck respectfully requests that this Court reconsider its Order denying the motion to disqualify the NPS from further prosecution given the USAO's impermissible delegation of its prosecutorial authority.

Respectfully submitted,

HEATHER E. WILLIAMS
Federal Defender

Date: October 2, 2026

*<u>/s/ Lisa Ndembu Lumeya</u>*
LISA N. LUMEYA
PETER MCGUIRE
Assistant Federal Defenders
Attorneys for Defendant
JACK M. PROPECK

[4] Moreover, the NPS is not a party to the litigation.